# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO HENNIS, | ) | |
| | ) | Civil Action No. 12 – 646 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| DORINA VARNER, *Chief Grievance Coordinator*, PRINCIPAL MR. VANCE, C.O. MS. SKILLINGS, SERGEANT MS. MACEYKO, HEARING EXAMINER MR. MACKEY, LIBRARIAN MR. WEAVER, SUPERINTENDENT JOSEPH MAZURKIEWICZ, | ) ) ) ) ) ) ) ) | ECF No. 40 |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Antonio Hennis ("Plaintiff") is a prisoner currently incarcerated at the State Correctional Institution at Pine Grove. In this *pro se* prisoner civil rights action brought pursuant to 42 U.S.C. § 1983, he alleges that Defendants violated his constitutional rights to access the courts, to equal protection and to due process of law while he was incarcerated at the State Correctional Institution at Greensburg ("SCI-Greensburg"). Currently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. For the following reasons, the Motion will be granted.

## I.   Plaintiff's Allegations

In his Amended Complaint (ECF No. 39), Plaintiff alleges that Mr. Weaver, the Librarian at SCI-Greensburg, imposed regulations that prohibited Plaintiff, as well as other inmates at SCI-

1

Greensburg, from preparing and filing meaningful legal papers to the courts by denying them the tools necessary to attack their sentences and conditions of confinement. Id. at ¶ 8. These regulations include, *inter alia*, (1) requiring inmates to purchase pre-paid copy cards from the prison commissary in order to make copies instead of allowing inmates to make emergency copies, which has resulted in filing delays; (2) requiring inmates to purchase white-out, which is necessary to make corrections, instead of providing it free of charge; (3) replacing typewriters that had memory and spell-check features with obsolete typewriters with no such features and failing to make more typewriters available to accommodate the prison's increased population, even though spare typewriters are in storage; (4) replacing the legal research software system with a new system, Lexis Nexis, that neither the inmates, nor inmate workers or staff are trained to use; (5) refusing to hire trained inmate paralegals to assist inmates in their research; and (6) barring use of the letter writing word processor for legal matters except in cases involving parole job letters. Id. at ¶¶ 9, 11, 14, 15, 16, 17, 23.

Plaintiff alleges that the aforementioned shortcomings in the prison library, which other DOC facilities do not have, have hindered his efforts to pursue his PCRA appeal and federal habeas corpus proceedings challenging his custody. Id. at ¶¶ 18, 35. In particular, he alleges that (1) because he cannot make emergency copies, he is delayed in meeting court deadlines and has had to request numerous continuances while awaiting money to purchase pre-paid copy cards; (2) because it is difficult to obtain use of a typewriter due to the number of inmates using the library at one time, or because he is forced to use typewriters without spellcheck or memory functions, it has resulted in the filing of sloppy documents, especially without the use of white-out; and (3) because of the lack of knowledge or assistance in legal research, his appeal to the

Pennsylvania Superior Court was denied on the basis that he failed to cite to legal authority to support his argument. Id. at ¶¶ 19, 24, 34.

Plaintiff claims that he presented his complaints to Mr. Vance who failed to address his concerns. Id. at ¶ 20. Plaintiff also claims that Mr. Vance told Plaintiff that white-out would no longer be provided by the library because Plaintiff "misused" it. Id. at ¶ 21.

Plaintiff alleges that he also presented his complaints to Superintendent Mazurkiewicz, who failed to redress Plaintiff's complaints regarding placing white-out in the library, discontinuing emergency copies, and providing comparable access to the library and typewriters in proportion to the number of inmates housed in particular units. Id. at ¶¶ 26, 27, 28, 29, 31. He also alleges that, unlike his predecessor, Supt. Mazurkiewicz closes the library when the scheduled staffer calls off sick rather than keeping it open with a replacement staff member. Id. at ¶ 30.

In connection with an incident that occurred on February 6, 2013, Plaintiff claims that Ms. Skillings, a Corrections Officer, confiscated some of his legal material. Specifically, he claims that one day she searched him on his way to work and discovered legal documents in his folder that belonged to two other inmates. Id. at ¶ 24(d). She not only confiscated the other inmates' documents but Plaintiff's personal legal work as well. Id. Plaintiff informed CO Skillings that one of the legal documents was his personal copy of his Habeas Reply Brief[1] but because Plaintiff's name was not on the document she did not believe that it belonged to him and confiscated it anyway. Id. at ¶ 24(e). Even when Plaintiff showed CO Skillings the cover sheet to the document, which indicated his name, she said that she didn't care and that he was not getting it back. Id. at ¶ 24(f). Plaintiff informed CO Skillings that he had another document in

---
[1] Plaintiff is referring to his habeas corpus proceedings in the Eastern District of Pennsylvania at No. 12-1280.

one of the other inmate's folders, which was Plaintiff's personal copy of his Brief to the Superior Court,[2] but CO Skillings told him that she didn't care because he should not have been in possession of another inmate's legal work. Id. at ¶ 24(g). Plaintiff explained to CO Skillings that he was allowed to assist other inmates with their legal work but CO Skillings said that she didn't care about his "jailhouse lawyer stuff" and told him that he would be receiving a misconduct. Id. at ¶ 24(h). Plaintiff claims that he tried to explain the situation to Supt. Mazurkiewicz and Sgt. Maceyko but neither of them used their "supervisory powers" to rectify the situation. Id. at ¶¶ 24(l), (n).

Plaintiff claims that he was treated differently from another inmate, Jim Young, who was found in possession of a file box containing other inmates' legal papers, and, in that case, the legal work was returned to the inmates and no misconducts were issued against inmate Young. Id. at ¶ 24(m).

At Plaintiff's misconduct hearing, presided over by Hearing Examiner Mr. Mackey, Plaintiff explained that he had been promised that his legal papers would be returned to him after the hearing, but Mr. Mackey decided that the legal papers were contraband and that they would not be returned. Id. at ¶ 24(q). This decision was upheld by Supt. Mazurkiewicz. Id. at ¶ 24(p), (r), (s).

Plaintiff maintains that the papers that were seized and confiscated were "essential" for the filing of a Rule 60(b) Motion attacking the federal court's denial of his habeas corpus petition, and, without these legal papers, he could not file the Rule 60(b) Motion. Id. at ¶ 24(k), (o).

---

[2] Plaintiff is presumably referring to his PCRA appeal at 2374 EDA 2010.

Finally, Plaintiff alleges that Ms. Varner, the Chief Grievance Officer, failed to remedy the situation after receiving notice of her "subordinates violations" through Plaintiff's inmate grievance appeals and then "condoned these acts" by determining that Plaintiff's grievance was filed untimely, even though he alleges that it was not. Id. at ¶ 32, 33.

## II.     Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Ashcroft v. Iqbal, 129 S. Ct.1937, 1949 (May 18, 2009) (citing Twombly, 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (citing Twombly, 550 U.S. at 556-57).

In Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in Phillips v. County of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008) (construing Twombly in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of Twombly and Iqbal as follows:

5

> After Iqbal, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See* Id. at 1949-50; *see also* Twombly, 505 U.S. at 555, & n. 3.

Fowler, 578 F.3d at 210.

Thereafter, in light of Iqbal, the United States Court of Appeals for the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), set forth the following two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See* Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citing 5A Wright and Miller, *Federal Practice and Procedure: Civil 2d,* § 1357; Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)). A court may also consider indisputably authentic documents. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Golden v. Cook, 293 F. Supp.2d 546, 551 (W.D. Pa. 2003) ("[C]ourts are permitted to consider matters of which they may take judicial notice, including records and reports of administrative bodies, and publically available records and transcripts from judicial proceedings 'in related or underlying cases which have a direct relation to the matters at issue.'") (citations omitted).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## III. Discussion

### A. Access to the Courts

Plaintiff claims that he was denied his right to access the courts. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaning legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."). Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Casey, 518 U.S. 343 (1996). In Lewis, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense . . . . Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied, *see* id., at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local

8

experimentation" in various methods of assuring access to the courts. Id., at 832, 97 S.Ct., at 1500.

Lewis, 518 U.S. at 351-52.

Thus, following Lewis, courts have consistently recognized two rules governing access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. *See*, *e.g.*, Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Demeter v .Buskirk, No. 03-1005, 2003 U.S. Dist. LEXIS 18133, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); Castro v. Chesney, No. 97-4983, 1998 U.S. Dist. LEXIS 4034, 1998 WL 150961 (E.D. Pa. March 31, 1998). Second, consistent with the Supreme Court's express view that "'we encourage local experimentation' in various methods of assuring access to the courts," Lewis, 518 U.S. at 352, courts have long recognized that public officials have significant discretion in the field and can provide meaningful access to the courts through a wide variety of means. *See*, *e.g.*, Peterkin v. Jeffes, 855 F.2d 1021, 1042 (3d Cir. 1988); Hester v. Morgan, No. 10-309, 2010 U.S. Dist. LEXIS 104385, 2010 WL 3907770, *2 (D. Del. Sept. 29, 2010); Tinsley v. Del Rosso, No. 08-1251, 2008 U.S. Dist. LEXIS 43259, 2008 WL 2236598 (D. N.J. May 30, 2008); Tormasi v. Hayman, No. 07-5683, 2008 U.S. Dist. LEXIS 37554, 2008 WL 1995125 (D. N.J. May 6, 2008); Annis v. Fayette County Jail, No. 07-1628, 2008 U.S. Dist. LEXIS 26721, 2008 WL 763735 (W.D. Pa. March 20, 2008); Hunter v. Schouppe, No. 06-1023, 2007 U.S. Dist. LEXIS 1887, 2007 WL 120030 (W.D. Pa. Jan. 10, 2007); Cook v. Boyd, 881 F. Supp. 171, 176 (E.D. Pa.1995).

First, Plaintiff claims that Mr. Weaver instituted regulations depriving Plaintiff of the tools necessary to prepare documents and file meaningful legal papers, including, *inter alia*, emergency copies, white-out, typewriters, and user friendly research systems or tutoring as to

9

their use.  He claims that these failures resulted in the dismissal of his appeal to the Superior Court, inordinate delays in civil matters, and the inability and hindrance in litigating his federal habeas corpus proceedings.  Id. at ¶ 37.  These allegations fail to state a claim for relief because court dockets and official filings, to which Plaintiff makes reference and has filed in connection with his original complaint, show that he did not suffer an actual injury, a requirement for an access to courts claim.

Plaintiff first claims that his Superior Court case (PCRA appeal) was dismissed because he could not cite to any legal authority to support his argument due to the shortcomings in the law library; however, the Superior Court docket at No. 2374 EDA 2010 indicates that he filed his brief on time on January 18, 2011, approximately two weeks **before** Mr. Weaver's alleged policies went into effect.  The Superior Court accepted the brief but Plaintiff ultimately lost his appeal.  While Plaintiff claims that his appeal was dismissed because he was unable to cite to legal authority in his brief, this is incorrect.  The Superior Court's opinion indicates that two of Plaintiff's four questions for review in his brief did not comply with the Rules of Appellate Procedure because they were "too vague to allow for meaningful review" and made "no sense." (ECF No. 18-1.)  In one of those questions, Plaintiff raised ten sub-questions, which the Superior Court described as a "hodge-podge of assertions without sufficient reference **to the record or case law** to make for meaningful review."  Id. (emphasis added).  Nevertheless, the Superior Court disposed of those questions by relying on the analysis and conclusions of the PCRA court which "attempted to address the substance of [Plaintiff's] underlying claims" and "comprehensively and properly disposed of" those claims.  Id.; *see also* Hennis v. Mazurkiewicz, CA No. 12-1280 (E.D. Pa. ECF No. 16, p.11) (citing Commonwealth v. Hennis, No. 2374 EDA 2010, at 3-4 (Pa. Super. Ct. Oct. 13, 2011)).  Thus, Plaintiff's loss on appeal to the Superior

Court was due to his failure to follow the rules of appellate procedure and present his claims coherently, not because of sloppy documents, typographical errors, lack of copies, a new legal research system, etc. The record belies Plaintiff's allegations of suffering an actual injury with respect to this issue. It is clear that Plaintiff simply did not present his questions for review in a concise manner.

Next, Plaintiff claims that Mr. Weaver's policies, and/or CO Skilling's actions in confiscating his legal materials, and the subsequent actions of Sgt. Maceyko, Mr. Mackey, Supt. Mazurkiewicz, and Ms. Varner in failing to have his property returned to him, hindered his efforts to challenge his custody through the filing of a Rule 60(b) Motion in his federal habeas corpus proceeding. These allegations fail to state a claim because they are also contradicted by court records. In fact, this issue has already been addressed by this Court in its Order dated July 3, 2013, when it denied Plaintiff's motion for injunctive relief. (ECF No. 42.) In that Order, this Court stated:

> On February 6, 2013, Officer Skillings observed Plaintiff leaving the block to go to his library job. (ECF No. 35-1 at ¶ 2.) He was carrying a large folder, which was suspicious to her because Plaintiff was supposed to work while in the library and not do his own legal work. Id. When she confronted Plaintiff, he initially claimed that all the legal material in the folder belonged to him. Id. at ¶ 3. Plaintiff does not dispute that this is what he told her. She took the folder and briefly went through it in the block office with Plaintiff present. Id. at ¶ 4. She found legal work belonging to two other inmates. Id. Plaintiff then helped her go through the folder to point out what belonged to others and what was his. Id. Plaintiff also had a book from the library, which he claimed was given to him by Ms. Collins. CO Skillings called Ms. Collins who denied that she gave Plaintiff the book. Id. CO Skillings then confiscated the library book and the legal work belonging to the two other inmates and she passed on the confiscated material to the security team. Id. at ¶ 5. She only confiscated the material that belonged to others, and returned Plaintiff's legal work to him with his folder. Id. Plaintiff was charged with refusing to obey an order, theft, having property of another and lying to an employee, and he pled guilty to each charge.

> Plaintiff now claims that some of the legal work that was confiscated belonged to him and he demands that it be returned. Defendants maintain that none of Plaintiff's legal work was confiscated that day, and, therefore, there is no property to return to him. Plaintiff adamantly disputes this assertion and it appears he claims that his reply brief in his habeas proceeding and an appellate brief to the Pennsylvania Superior Court were confiscated and not returned. He states that he was under the impression that the materials would be returned to him after his misconduct hearing but states that they were deemed contraband by the hearing examiner and not returned to him. Because not having these materials allegedly interfered with his ability to litigate his habeas case, he claims that his right to access the courts was denied. Defendants contend that even if Plaintiff's legal work in connection with his habeas proceeding was confiscated and not returned to him, Plaintiff still cannot show that he is entitled to injunctive relief.
>
> Plaintiff argues that the seizure of his legal work denied him the opportunity to put forth an arguable miscarriage of justice claim in his habeas proceeding both before and after the District Judge entered judgment denying him habeas relief. Specifically, Plaintiff states that the Magistrate Judge failed to address his miscarriage of justice claim in her Report and Recommendation and he was deprived of an opportunity to argue error on the part of the Magistrate Judge without his legal materials. Review of the docket sheet for Plaintiff's habeas case out of the Eastern District of Pennsylvania shows that Plaintiff did in fact file Objections (over 50 pages in length) to the Magistrate Judge's Report and Recommendation two days prior to the day his legal materials were allegedly confiscated. *See* 5:12-cv-1280 (E.D. Pa. 2012) (ECF No. 22). Moreover, review of Plaintiff's Objections reveals that Plaintiff did argue that the Magistrate Judge "failed to give appropriate consideration to [his] miscarriage of justice circumstances . . . ." Id. at 15. In fact, a great portion of Plaintiff's Objections were dedicated to just this argument. Plaintiff also claims that without his legal materials he was unable to make a credible argument in a Rule 60(b) motion after the District Judge entered judgment denying him relief. However, the undersigned finds that any such motion based on a miscarriage of justice argument would have been deemed without merit because Plaintiff had previously made these arguments in his Objections, which he had filed at the time he was in possession of his legal materials, and which the District Judge considered when denying him habeas relief.

(ECF No. 42 at 3-5.)

A review of what was filed and when it was filed in the habeas proceeding at No. 12-1280 in the Eastern District of Pennsylvania defeats Plaintiff's clam of denial of access to the courts. On March 12, 2012, Plaintiff filed a 90+ page habeas petition and supporting

memorandum. No. 12-1280 (E.D. Pa., ECF 1 and 1-2.) The DA filed a response in July 2012. No. 12-1280 (E.D. Pa., ECF 11.) Plaintiff then filed a Reply to the DA's Response on July 26, 2012. No. 12-1280 (E.D. Pa., ECF 13.) On November 8, 2012, the Magistrate Judge issued a Report and Recommendation denying Plaintiff's petition, finding that Plaintiff had defaulted his ineffective assistance of counsel claims. No. 12-1280 (E.D. Pa., ECF 16, p.16.) However, the Magistrate Judge went on to reach the merits of Plaintiff's ineffective assistance claims anyway, addressed them at length, and found them to be without merit. Id.

Plaintiff sought several extensions of time, and, on February 4, 2013, he finally filed lengthy Objections to the Magistrate's Report and Recommendation. No. 12-1280 (E.D. Pa., ECF No. 22.) The District Court subsequently overruled Plaintiff's Objections and adopted the Magistrate's Report and Recommendation on March 11, 3013. No. 12-1280 (.E.D. Pa., ECF No. 24.) Plaintiff appealed that order to the Third Circuit on April 11, 2013, which denied a certificate of appealability on September 3, 2013. No. 12-1280, (E.D. Pa., ECF Nos. 25, 27.)

Plaintiff's claim that he was unable to file a Rule 60(b) motion challenging the Magistrate's resolution of his claim makes no sense. Plaintiff's materials were confiscated two days after he had already filed Objections to the Magistrate's Report and Recommendation on February 4, 2013. Those Objections were voluminous and covered the arguments Plaintiff claimed he was unable to make in a Rule 60(b) motion without the seized documents. In fact, Plaintiff repeatedly referenced and cited to these documents in his Objections. No. 12-1280 (E.D. Pa., ECF No. 22.) In any event, a Rule 60(b) motion can be submitted within "a reasonable time". Fed. R. Civ. P. 60(c). Plaintiff never attempted to do so,, nor did he attempt to supplement his Objections or file any request for leave to do so after the alleged confiscation and before the March 11, 2013 ruling. Instead, he filed an appeal to the Third Circuit. In sum,

Plaintiff cannot show that the alleged library deficiencies, or the alleged confiscation of his "essential" legal documents, had any impact on the denial of his habeas petition.

The Court concludes that Plaintiff is unable to state an access to courts claim based on the alleged deficiencies in the law library and/or the confiscation of his legal property.

### B. Personal Involvement of Mazurkiewicz, Varner, Maceyko and Mackey

The allegations in Plaintiff's Amended Complaint against Supt. Mazurkiewicz, Ms. Varner, Sgt. Maceyko and Mr. Mackey are insufficient to establish personal involvement in any alleged violation of Plaintiff's rights. A defendant must be shown by the allegations contained in the complaint to have been personally involved in the commission of the wrong; liability cannot be based solely by virtue of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); *see also* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

The filing of a grievance is not sufficient to show the actual knowledge necessary for personal involvement. *See* Rode, 845 F.2d at 1208; Ramos v. Pennsylvania Dept. of Corrections, 2006 WL 2129148, *2 (M.D. Pa. July 27, 2006); Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006). Likewise, participation in a prison's other administrative appeals processes, such as misconduct and prison review committee appeals, is an insufficient basis for personal involvement. *See* Fortune v. Hamberger, 2007 WL 2782320, at *3 (W.D. Pa. Sept. 21, 2007) (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983)).

Moreover, the mere fact that an official receives and reviews a letter or grievance appeal is insufficient to establish personal involvement (*i.e.*, failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue). *See* Hawkins v. Brooks, 2011 WL 2260771, at *5-6 (W.D. Pa. May 6, 2011). Responding to a grievance or misconduct, or related appeals, does not suffice for the personal involvement that is the *sine qua*

*non* for § 1983 civil rights liability; such liability, moreover, cannot rest merely upon one's supervisory position. Evancho v. Fisher, 423 F.3d 347 (3d. Cir. 2005); Brooks v. Beard, 167 F. App'x 923 (3d Cir. 2006).

Aside from Mr. Weaver, Mr. Vance (but only as in regards to the refusal to provide white-out), and CO Skillings, all of the other defendants are alleged to be liable only because of their supervisory authority and/or their refusal to take action in response to Plaintiff's complaints. Plaintiff repeatedly refers to Supt. Mazurkiewicz failing to supervise, failing to invoke his supervisory powers, and failing to redress Plaintiff's complaints and appeals. (ECF No. 39 at ¶¶ 24, 25, 27, 31.) Likewise, Ms. Varner is alleged to have "derelicted" her duties as Chief Grievance Officer. (ECF No. 39 at ¶¶ 33, 34.) These allegations do not suffice for personal involvement.

Similarly, Plaintiff sues Sgt. Maceyko in her role as CO Skillings' supervisor for failure to take corrective action after the alleged violation by CO Skillings. Plaintiff faults Sgt. Maceyko for failing to "invoke her supervisory powers," which is insufficient to show actual involvement in the alleged wrong. (ECF No. 39 at ¶¶ 24(n), 24(o)). And Plaintiff's claims against Hearing Examiner Mr. Mackey fail, as does the claim against Ms. Varner because liability is premised solely upon Mr. Mackey's determination regarding a misconduct that had been issued by CO Skillings. (ECF No. 39 at ¶¶ 24(p) 24(r)).

For these reasons, Supt. Mazurkiewicz, Ms. Varner, Sgt. Maceyko and Mr. Mackey will be dismissed.

### C. Equal Protection

Plaintiff raises two equal protection claims. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.

Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)). *See also* United States v. Armstrong, 517 U.S. 456 (1996) (Equal Protection Clause prohibits decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification). To state a claim under this theory, "a plaintiff must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008).

Here, Plaintiff claims that Mr. Weaver singled him out due to his complaining about the failure to provide white-out, make emergency copies, use the word processor, and the lack of typewriters. As a result, Mr. Weaver instituted policies that deprived him and the other inmates the tools necessary to gain access to the courts. He claims that these tools are available at SCI-Camp Hill, SCI-Graterford, SCI-Somerset, and SCI-Western, etc. (ECF No. 39 at ¶ 41.)

In analyzing an equal protection claim, a court must consider what interest or type of classification is involved. Plaintiff's present claim does not involve a classification based on race, religion or national origin. "Because the distinctions at issue here do not implicate a suspect of quasi-suspect class, the state action here is presumed to be valid and will be upheld if it is 'rationally related to a legitimate state interest.'" Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 423 (3d Cir. 2000). Most likely, the purpose for Mr. Weaver's policy changes was to lower the State's expenses of incarceration. *See* id. (citing Malmed v. Thornburgh, 621 F.2d 565, 569 (3d Cir. 1980) (state action may be upheld on any valid ground, even one hypothetically posed by the court). In fact, Plaintiff's grievance and appeal responses

indicate that the white-out was discontinued because of its misuse and due to cost consideration. In the Court's view, these are legitimate interests. Thus, Plaintiff has failed to state an equal protection claim.

Plaintiff's second equal protection claim, that CO Skillings intentionally singled him out and treated him differently than a prior law clerk by the name of Jim Young when she confiscated Plaintiff's legal work after she found out that he was a prison law clerk. The prior law clerk, inmate Young, was found in possession of other inmates' legal work and not subjected to confiscation of his own legal work as punishment. (ECF No. 39 at ¶ 44). Once again, the distinction here does not implicate a suspect or quasi-suspect class.

Furthermore, the fact that Plaintiff was issued a misconduct, and inmate Young was not, does not state an equal protection claim. The record indicates that Plaintiff was charged with refusing to obey an order and lying to an employee, charges that did not stem from being in possession of the other inmates' property. He was also charged with theft, which stemmed from the unauthorized possession of Ms. Collins' library book that she denied giving to him. The only other charge issued against Plaintiff was having property of another, which did in fact stem from Plaintiff's possession of the other inmates' property. However, the record indicates that the only "punishment" he received was revocation of the other inmates' property because it was deemed contraband and the defendants maintain that none of the confiscated property was Plaintiff's legal materials. There are no allegations in the Amended Complaint that inmate Young had any of his own legal materials intermixed with the other inmate's legal work, unlike Plaintiff, and perhaps that is the reason why his own legal work was not confiscated. Plaintiff's allegations are insufficient to state a plausible equal protection claim.

**D. Due Process**

17

Plaintiff claims that he was denied due process when CO Skillings confiscated his property after it was made clear that the confiscated documents were legal materials he needed to litigate his habeas case. (ECF No. 39 at ¶ 45(b)). This allegation fails to state a due process claim because Plaintiff had an adequate post-deprivation remedy available to protect his due process rights through the DOC's administrative grievance procedures or a state tort action. *See* Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that a prisoner's procedural due process claim for the destruction or loss of his property fails "if a meaningful post-deprivation remedy is available for the loss[;]" furthermore, it is not relevant whether the loss of property occurred as a result of negligent or intentional conduct); *see also* Tapp v. Proto, 404 F. App'x 563, 567 (3d Cir. 2010) (citing Tillman v. Lebanon County Corr., 221 F.3d 410, 422 (3d Cir. 2000) (summarily dismissing prisoner's due process claims where plaintiffs have had state tort suits for conversion of property and prison grievance procedures available to them)); Jerry v. Beard, 2011 WL 989856, at *2 n.1 (3d Cir. 2011) ("[T]he post-deprivation remedies available to Jerry under the prison grievance procedure and Pennsylvania law constitute adequate process.") (citing Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008)).

Plaintiff's second due process claim is that he was rendered incapable of filing proper pleading to the courts in order to challenge his liberty or conditions of confinement due to Mr. Weaver's change in policies. (ECF No. 39 at ¶ 46.) These allegations do not support a due process claim because, as addressed *supra*, Plaintiff was not rendered incapable of filing a proper pleading to the court. To the extent he claims that he did not always have access to a typewriter or white-out, these allegations are insufficient to state either a due process or access to courts claim. While typing is one method by which an inmate can pursue the right to access the courts, handwriting is an equally effective method used to pursue the same right. Moreover, courts do

not require inmates to use white-out to correct their mistakes. Given that the State does not have an obligation to provide inmates with unlimited free legal supplies, and inmates often have limited access to such materials, courts do not expect the work product of a *pro se* prisoner to be that of an attorney. Moreover, inmates do not have a constitutional right to photocopying services or access to a computer/typewriter. *See* Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997) (noting that inmates have no constitutional right to photocopying services); Russell v. Ohio, 2012 U.S. Dist. LEXIS 33930 (D. Ohio 2012) (finding no First Amendment Right to the use of a computer). Therefore, these allegations do not state a due process or an access to courts claim.

**E. Injunctive Relief**

To the extent Plaintiff sought injunctive relief with respect to any of his claims, his subsequent transfer to SCI-Pine Grove, and the publicly-announced closing of SCI-Greensburg render such claims moot. Bronson v. Overton, No. 08-52E, 2010 WL 2512345, at *1 n.1. (E.D. Pa. May 27, 20110); Fortes v. Harding, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) ("Fortes' transfer to another institution moots any claim for injunctive and declaratory relief.").

**IV. Conclusion**

An Order consistent with the Memorandum Opinion granting Defendants' Motion to Dismiss will issue separately.

Dated: March 31, 2014

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Antonio Hennis
    HY-4980
    SCI-Pine Grove
    191 Fyock Road
    Indiana, PA  15701
    *Via U.S. Postal Mail*

    Counsel of Record
    *Via CM/ECF Electronic Mail*